IN THE UNITED STATES COURT FEDERAL CLAIMS

| | |
|---|---|
| **Ute Indian Tribe of the Uintah and Ouray Indian Reservation**, <br><br> Plaintiff, <br><br> v. <br><br> **United States**, <br><br> Defendant. | Case No. 18-357 L <br><br> Senior Judge Robert H. Hodges, Jr. |

## UNITED STATES' MOTION TO STAY

Defendant United States of America (the "***United States***" or "***Defendant***") respectfully moves, pursuant to Rule 7 of the Rules of the United States Court of Federal Claims, to stay this action pending the resolution of a related case filed by Plaintiff Ute Indian Tribe of the Uintah and Ouray Indian Reservation (the "***Tribe***") in the United States District Court for the District of Columbia (the "***DDC Action***"). The Tribe filed the DDC Action one day after it filed this action. The DDC Action, which involves the same operative facts and legal issues as this case, includes claims to quiet title in or otherwise establish ownership of the lands at issue in this lawsuit. And though those claims are the subject of a pending motion to dismiss, the DDC Action also includes a challenge to an administrative decision by the Department of the Interior that concerns the same key legal issue of

1

ownership that this Court identified in its ruling on the United States' motion to dismiss in this case.

For these reasons, and as set forth in detail below, entering a stay in this case until the resolution of the DDC Action will avoid conflicting rulings and promote judicial efficiency, without undue prejudice to the Tribe's interests.

## BACKGROUND

On April 25, 2017, the Tribe submitted a formal request to the Secretary of the Interior (the "**Restoration Request**"), pursuant to Section 3 of the Indian Reorganization Act[1], seeking restoration to tribal ownership of an area of public domain lands that the United States withheld from sale and set apart for the prospective location of the Uncompahgre Band of Ute Indians in 1882 (the "**Public Domain Lands**"). *See generally* Letter from S. Chapoose to R. Zinke, dated April 25, 2017, attached hereto as **Exhibit 1**. In a letter dated March 2, 2018, Deputy Secretary David L. Bernhardt denied the Restoration Request. *See* Letter from D. Bernhardt to L. Duncan, dated March 2, 2018, attached hereto as **Exhibit 2**.

In denying the Restoration Request, now-Secretary Bernhardt referenced a February 21, 2018 Solicitor's Opinion issued by the Department of the Interior and stated—in keeping with the referenced opinion—that "history and applicable statues reveal no convincing evidence of Congressional intent that the Tribe had a compensable ownership interest in the [Public Domain Lands]." *Id.*; *see also*

---

[1] Section 3 of the Indian Restoration Act provides, in relevant part, that "[t]he Secretary of the Interior, if he shall find it to be in the public interest, is authorized to restore to tribal ownership the remaining surplus lands of any Indian reservation heretofore opened . . . by any of the public-land laws of the United States." 25 U.S.C. § 5103(a).

Solicitor's Opinion M-37051, dated February 21, 2018, at 2, attached hereto as **Exhibit 3**. As a result, "areas within the [Public Domain Lands] boundary were never remaining surplus lands of an Indian reservation in the context of section 3." Ex. 2 (Letter from D. Bernhard to L. Duncan).

The Tribe filed this action on March 7, 2018, five days after the Department of the Interior's denial of the Restoration Request. *See* Compl., ECF No. 1. In its Complaint, the Tribe alleges that the Public Domain Lands are surplus lands in which it retains an ownership interest. *See generally id.* And, based on this assertion, the Tribe brought claims for breach of trust, violation of the Fifth Amendment, and accounting. *Id.* ¶¶ 65–94.

One day later, on March 8, 2018, the Tribe filed the DDC Action. *See* Compl. ¶¶ 13–76, *Ute Indian Tribe of the Uintah & Ouray Indian Reservation v. United States*, No. 1:18-cv-00546 (D.D.C. Mar. 8, 2018), attached hereto as **Exhibit 4**. As in this action, the Tribe's Complaint in the DDC Action alleges that the Public Domain Lands are surplus lands in which it has an ownership interest. *See generally id.*[2] Based on this allegation, the Tribe brought a claim under the Administrative Procedure Act directly challenging the Department of the Interior's denial of the Restoration Request (the "***APA Claim***"). Ex. 4 (DDC Complaint) ¶¶ 112–17. The Tribe also asserted claims for declaratory relief, requesting declarations that the Public Domain Lands should be held in trust for the Tribe's benefit, title to the Public Domain Lands should be quieted in the Tribe, and the

---

[2] Notably, the operative complaints in this action and the DDC Action contain more than fifty paragraphs of nearly identical factual assertions. *Compare* Compl. ¶¶ 10–64 *with* Ex. 4 (DDC Complaint) ¶¶ 13–76.

3

United States and its agents are trespassing on the Public Domain Lands. *Id.* ¶¶ 89–124.

On October 24, 2018, the United States moved to dismiss all of the Tribe's claims before this Court. Similarly, in the DDC Action, the United States moved on October 16, 2018 to dismiss all of the Tribe's claims other than the APA Claim. On November 4, 2019, this Court granted in part and denied in part the United States' motion to dismiss. *See* Order & Op. 33–34, ECF No. 27. In its ruling, the Court accepted as true, for purpose of resolving a motion at the pleadings stage, the Tribe's contention that "the 1880 Act created its 'recognized title' to the [Public Domain Lands]" but also expressly recognized that this contention is a "contested premise." *Id.* at 11. The Court further explained that "[a]n opportunity to rule on the soundness of this premise would facilitate resolution of this case." *Id.* at 34.

The United States' motion to dismiss in the DDC Action is still pending.

**ARGUMENT**

A court's discretion to stay its proceedings is broad and well-established. *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). And, within this wide discretion, a court has the power to control its docket by issuing a stay of proceedings pending the outcome of other litigation. *Landis*, 299 U.S. at 254. It is not necessary that the causes of action in both proceedings be the same or the issues in each case identical. *Id.* Rather, a stay is warranted where "it will avoid conflicting opinions and promote judicial efficiency, while at the same time it does not unduly prejudice a party's interest." *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (1999); *see also UnionBanCal Corp. & Subsidiaries v. United States*, 93 Fed. Cl. 166, 167

(2010) (explaining that a stay is justified if it "simplifies the issues, proof, and questions of law which could be expected to result from a stay" (internal quotations and citation omitted)).

Thus, for example, in *UnionBanCal*, the Court of Federal Claims granted a motion to stay pending the outcome "of an appeal in a separate case that addresse[d] a similar issue." 93 Fed. Cl. at 167. In granting the stay, the court acknowledged that the ruling in the related case would not answer every legal question or preclude a trial in the *UnionBanCal* case, but also explained that the stay "outweigh[ed] any potential prejudice to Plaintiff" by providing guidance on similar issues and "clarify[ing] and simplify[ing] evidence to be presented at trial." *Id.* at 168. Similarly, in *Corning Glass Works v. United States*, the Court of Claims—the precursor to the Federal Circuit—held that a stay entered by the trial judge was proper "pending the outcome of a similar case currently in [the Western District of Virginia]." 220 Ct. Cl. 605, 605, 606–07 (1979). As in *UnionBanCal*, the *Corning Glass Works* court held that a stay would further judicial economy because—due to the similarity of issues—"if the [Western District of Virginia] were to resolve the[] issues in plaintiff's favor, only an accounting trial might be necessary in this court." *Id.* at 607.

Here, the only active claim remaining in this case is the Tribe's third cause of action under the Fifth Amendment for an alleged unconstitutional taking. And, as this Court recognized in its ruling on the United States' motion to dismiss, whether the Tribe ever had title to the Public Domain Lands is a threshold title issue the parties must address before moving forward on the Tribe's takings claim. *See* ECF

5

No. 27 at 33–34.[3] The answer to this question involves the same or substantially similar factual and legal issues implicated by the Tribe's claims for declaratory relief in the DDC Action. Further, the threshold legal question before this Court is the same question the Department of the Interior answered in denying the Restoration Request, which denial the Tribe expressly challenges through the APA Claim in the DDC Action. *See* Ex. 2 (Letter from D. Bernhard to L. Duncan); Ex. 3 (Solicitor's Opinion M-37051); Ex. 4 (DDC Complaint) ¶¶ 113–17. Based on its allegations, the question of whether the Tribe has ever had recognized title to the Public Domain Lands will likely be front and center in the DDC Action, even under just the APA Claim that will undoubtedly proceed.

If the parties move forward in this case, they will likely be required to expend resources on discovery (including the potential for costly historical discovery) into a threshold legal issue (the question of the Tribe's title) that is likely to be resolved in the DDC Action. The parties will be required to spend additional resources briefing the issue before this Court, and this Court will be required to spend judicial resources considering and ruling on that briefing. All for a decision that may ultimately conflict with—or become unnecessary in light of—the court's ruling in the DDC Action.

In contrast, the United States has already prepared and submitted an administrative record in the DDC Action for the Restoration Denial, which, as

---

[3] The resolution of this question is necessary in order for the Tribe to demonstrate it has standing sufficient to maintain its takings claim. *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.")

6

explained above, implicates the question of whether the Tribe received recognized title to the Public Domain Lands under the 1880 Act. *See* Decl. Certifying List of Contents of Admin. R., *Ute Indian Tribe of the Uintah & Ouray Indian Reservation v. United States*, No. 1:18-cv-00546 (D.D.C. Jan. 23, 2020), attached hereto as **Exhibit 5**. No further discovery on this issue is needed or allowed in the DDC Action, at least with respect to the APA Claim, as judicial review of the Tribe's challenge to the Restoration Denial will be conducted solely on the administrative record. *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 6 (D.D.C. 2018) ("In keeping with the principle that a court sitting to review agency action under the APA does not engage in a *de novo* review of the matter, judicial review is generally limited to the administrative record."). Thus, the question of the Tribe's historical ownership interest (if any) in the Public Domain Lands can be ready for decision in the DDC Action as soon as the parties brief the issue for the court.[4]

Just as in *Corning Glass Works*, if the court in the DDC Action resolves the ownership issue in the United States' favor—by confirming the Department of the Interior's determination—it is likely that no further substantive proceedings in this Court will be necessary. At the very least, allowing the DDC Action to proceed first

---

[4] For this reason, the fact that this action was filed one day earlier than the DDC Action is not a material consideration for purposes of this Motion. Beyond the fact that the Tribe likely filed this action first only to avoid dismissal of this case under 28 U.S.C. § 1500, as noted, the administrative record is complete and has been provided to the Tribe. Once the United States' motion to dismiss has been decided in the DDC Action, the parties will confer on case management, including a schedule for cross-motions for summary judgment on the APA Claim.

will eliminate the danger of inconsistent rulings on the ownership issue and may clarify and simplify the issue for the parties and this Court. Such a result provides ample justification for the requested stay.

A stay will preserve judicial resources. It will likely prevent conflicting decisions. And there is little likelihood of prejudice to the Tribe if this Motion is granted, as there will be no danger of the statute of limitations running and both parties will benefit by not having to engage in unnecessary duplicative briefing or unneeded and costly discovery.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court stay this case pending resolution of the DDC Action.

Respectfully submitted this 7th day of February, 2020.

> PRERAK SHAH
> Acting Deputy Assistant Attorney General
>
> By: /s/ Brigman L. Harman
> Brigman L. Harman
> United States Department of Justice
> Environment & Natural Resources Division
> Natural Resources Section
> 150 M Street, NE
> Washington, D.C. 20002
> Tel: (202) 616-4119
> Fax: (202) 305-0506
> Email: Brigman.Harman@usdoj.gov
>
> *Counsel of Record for Defendant United States*
>
> SALLY J. SULLIVAN
> United States Department of Justice
> Environmental & Natural Resources Division
> Natural Resources Section
> 150 M Street, NE

Washington, D.C. 20002
Tel: (202) 514-9269
Fax: (202) 305-0506
E-Mail: Sally.Sullivan@usdoj.gov

*Of Counsel for Defendant United States*

KENNETH A. DALTON, Director
GLADYS COJOCARI
CHRISTOPHER K. KING
Department of the Interior
Office of the Solicitor
Indian Trust Litigation Officer
1849 C. Street, N.W.
Washington, D.C. 20240
Tel:  (202) 208-5986
      (202) 208-4326
      (202) 208-4409
Fax: (202) 219-0444
E-Mail: Kenneth.Dalton@sol.doi.gov
        Gladys.Cojocari@sol.doi.gov
        Christopher.King@sol.doi.gov

*Of Counsel for Defendant United States*